**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

JEREMY DALE DAVIS,                                                                      PETITIONER

v.                                           CIVIL ACTION NO.:  1:12cv160-NBB-SAA

RONALD KING, et al.,                                                              RESPONDENTS

## MEMORANDUM OPINION AND ORDER

Petitioner Jeremy Dale Davis, Mississippi prisoner no. R0265, has filed a federal habeas

petition pursuant to 28 U.S.C. § 2254 challenging his State court convictions for aggravated

assault on a police officer (Count I), escape (Count II), burglary of a dwelling (Count III), and

possession of a firearm by a convicted felon (Count IV).  Having considered the submissions of

the parties, the State court record, and the law applicable to Petitioner's claims, the Court finds

that the petition should be denied.

### Background Facts and Procedural History

On September 25, 2004, the Aberdeen Police Department received a report that a vehicle

was backing down a bridge on the highway.  Officer James Johnson responded, finding an

unoccupied vehicle parked on the side of the road.  Inside the vehicle was an "empty beer can

and a cold beer bottle."  At that point, Officer Johnson received a call that a fellow officer had

stopped a vehicle on the other side of the bridge and responded as backup to that call.  When

Officer Johnson returned to the abandoned vehicle, Davis was in the car attempting to start the

vehicle.  Officer Johnson smelled alcohol and asked Davis to exit the car.  He patted Davis down

to check for weapons and found two beer cans in Davis' pockets.  Davis failed a field sobriety

test and did not have a valid driver's license or proof of insurance.  Davis was taken to the

Monroe County Sheriff's Department and administered an intoxilyzer test, which revealed he had a .151 blood alcohol content, almost twice the legal limit. Davis was placed under arrest and transported to the Aberdeen Police Department.

Once at the Aberdeen Police Department, Davis attempted to escape after using the restroom, and officers had to chase Davis to return him to the processing room. He would not remain in his seat, so he was handcuffed to a folding metal chair in the processing room. The video cameras in the processing room were turned on. While Officer Johnson was processing Davis, some calls came in and other officers left the police department to respond, which left Officer Johnson, Davis, and the dispatcher in the station. Officer Johnson decided to transport Davis to the Sheriff's Department to have him booked. Once Davis' handcuffs were removed from the chair, Davis tried to pull away and "said he wasn't going to jail." Davis and Officer Johnson began "tussling," at which point they moved beyond the range of the video cameras. Officer Johnson reached for his pepper spray, and Davis pulled Officer Johnson's service weapon from his holster. A struggle over the gun ensued. Davis fired twice into the wall while Officer Johnson attempted to push the gun away.

Officer Johnson testified:

[Davis] fired once into the ceiling, which shot the light out, and then it ended up above our heads, and his reach is longer than mine. Well, he got the pistol turned downward, like at my head. So I grabbed the slide of my pistol and pushed it, tried to push it up and away from me, and he pulled the trigger, and it went in my shoulder, which went down, ended up going through my T4 vertebrae. That's why it done the spinal damage, and then it ended up lodged between two of my ribs, and it's still in there right now.

(Trial Tr. vol. 2, 135-36). Officer Johnson testified that he fell to the floor and remained there until emergency response arrived.

The dispatcher, Anita Russell, heard the commotion and saw the light shatter when Davis shot the ceiling. She went back to the processing room, saw the struggle, and called other officers to alert them. After requesting backup, Russell went back towards the room to check on Officer Johnson and met Davis in the hallway. Davis pointed the gun at Russell's head, told her to get out of the way, and ran out of the station.

After Davis' escape, the Mississippi Bureau of Investigation was called in, and law enforcement began a search for Davis. Law enforcement received a call that a man matching Davis' description had been spotted near West Short Street and soon afterwards received a report of a burglary on that street. Officers responding to the burglary were told that clothing, a box cutter, and a pair of pliers had been taken. Davis was apprehended soon thereafter, wearing some of the stolen clothing and having possession of the other stolen items. Once Davis was placed in the patrol car, he attempted to slide out of the other side. As a result, officers got in the vehicle on either side of him and he was given his *Miranda*[1] rights. Later that afternoon, Davis signed a waiver of rights form and spoke to law enforcement about what had happened.

Agent Randy Ginn of the Mississippi Bureau of Investigation testified that Davis gave a detailed account of what had happened leading up to and following the shooting at the police department. He stated that after the interview, officers asked for and received permission to conduct a recorded statement from Davis. The recorded confession was admitted as Exhibit S-6 and played for the jury. Likewise, the video recording from Officer Johnson's patrol vehicle and the video recording of Davis in the processing room were admitted as Exhibits S-8 and S-9. The tapes were cued to the incidents involving Davis and played for the jury.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Following the shooting, Davis went to the home of Hope Johnson, his girlfriend. Terry McAllister testified that he was sitting on Johnson's porch when Davis arrived looking nervous and holding a gun. Shurn Morgan, who was inside Johnson's home, testified that Davis entered and stated that he had "just shot the police." Morgan took the gun from Davis and left, later giving the gun to the police. Johnson corroborated Morgan and McAllister's testimonies.

Dr. David Chang, Officer Johnson's neurosurgeon, testified to the extent of Johnson's injuries. Dr. Chang stated that the bullet caused injury to Officer Johnon's spinal cord. Davis took the stand and admitted on cross-examination that he was guilty of escape (Count II), burglary (Count III), and felon in possession of a firearm (Count IV). He claimed that he had no memory of shooting Officer Johnson. He also claimed throughout his cross-examination that the majority of the State's witnesses lied on the stand.

Petitioner was convicted of aggravated assault on a police officer (Count I), escape (Count II), burglary of a dwelling (Count III), a possession of a firearm by a convicted felon (Count IV) in the Circuit Court of Monroe County, Mississippi. He was sentenced to serve a term of thirty years on Count I, twenty-five years on Count III, and three years on Count IV, all sentences to be served consecutively in the custody of the Mississippi Department of Corrections. Petitioner was sentenced as an habitual offender pursuant to Miss. Code Ann. § 99-19-81 as to Counts I, III, and IV. He was sentenced on Count II to serve a term of one year in the custody of the Monroe County Sheriff, said sentence to run consecutively to the sentence in Count IV.

Petitioner appealed his convictions and sentences to the Mississippi Supreme Court. Petitioner's attorney filed a brief stating that he was unable to find any arguable issues on appeal.

The Mississippi Supreme Court allowed Petitioner time to file a *pro se* brief.  (Answer, Ex. A).

His brief was not timely filed, however, and was stricken from the record.  (*Id*., Ex. B).

Thereafter, the Mississippi Supreme Court ordered further briefing on whether there was a

violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).  (*Id*., Ex. C).  In response, Petitioner filed a

*pro se* supplemental brief arguing that his rights under the Equal Protection Clause were violated

because the State did not comply with *Batson*.  Petitioner's appellate attorney also filed a

supplemental brief alleging that the trial court erred in ruling that *Batson* was not violated by the

State's exercise of peremptory challenges.  The Mississippi Supreme Court upheld the denial of

Davis' *Batson* challenges and affirmed his convictions and sentences.  *Davis v. State*, 76 So. 3d

659 (Miss. 2011) (Cause No. 2008-KA-01733-SCT) (Answer, Ex. D).

Aggrieved of this decision, Petitioner filed an application for leave to file a post-

conviction motion in the Mississippi Supreme Court, raising the following issues, as stated by

Petitioner:

I.      Abuse of discretion.
II.     Prosecutorial misconduct.
III.    Ineffective assistance of trial and appellate counsel.
IV.     Illegal sentence.

The Mississippi Supreme Court denied Petitioner's application, holding in pertinent part:

The panel finds that Davis fails to make a substantial showing of the denial of a
state or federal right as required by Miss. Code Ann. § 99-39-27(5).  The panel
further finds that Davis' claim of ineffective assistance of counsel fails to meet
the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  The
application will therefore be denied.

(Answer, Ex. E).  Thereafter, Petitioner filed a petition for writ of habeas corpus in this Court

pursuant to 28 U.S.C. § 2254, raising the following grounds for relief, as summarized:

Ground One.   Abuse of discretion by the trial court for:

A. Failing to bar testimony regarding the extent of Officer Johnson's injuries;

B. Allowing the State to play portions of the tapes admitted as S-8 and S-9 to the jury;

C. Allowing improper redirect examination of Agent Randy Ginn;

D. Allowing Dr. Change and Agent Ginn to testify as experts;

E. Failing to advise Davis that it was his choice to decide whether to testify;

F. Failing to grant a change of venue;

G. Allowing references to the race of Davis and Officer Johnson;

H. Denying Davis' *Batson* challenge to the State's peremptory strikes; and

I. Allowing Davis to be in ankle restraints during trial;

Ground Two. Prosecutorial misconduct for:

A. Improper peremptory strikes under *Batson*;

B. Making prejudicial comments;

C. Making himself an unsworn witness through leading questions;

D. Introducing improper hearsay;

E. Improper redirect;

F. Tampering with and only playing a portion of the tapes introduced as S-8 and S-9, which were not previously shown to Davis;

G. Missing facts;

H. Suborning false testimony;

I. Improper comments; and

J. Improper closing arguments.

Ground Three. Ineffective assistance of counsel for:

A. Trial counsel's failure to raise the issue of Davis' competence at the time of the crime;

B. Trial counsel's failure to challenge the illegal arrest;

C. Trial counsel's failure to move to suppress Davis' confession;

D. Trial counsel's failure to argue that the assault was the result of duress or that the charge should have been simple assault;

E. Appellate counsel's failure to file an adequate appellate brief; and

F. Trial counsel's conflict of interest.

Ground Four. Illegal sentence as an habitual offender.

## Procedurally Barred Claims

Respondents argue that Davis has never submitted the allegations in Grounds One (I) and

Three (F) to the State courts. In Ground One (I), Davis claims that he was in ankle restraints

during trial.  (ECF No. 6, p. 2).  In Ground Three (F), he claims that defense counsel had a conflict of interest because he "were the city of Aberdeen which denied Petitioner a fair trial (See Tr. 31)."  (ECF No. 6, p. 4).

Applicants seeking federal habeas relief under § 2254 are required to exhaust all claims in state court prior to requesting federal collateral relief."  *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999).  To satisfy this requirement, a federal habeas petitioner must generally present his claims to the state's highest court in a  procedurally proper manner and provide that court with a fair opportunity to pass upon the claims.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

Here, Davis did not present the claims presented in Grounds One (I) and Three (F) to the Mississippi Supreme Court, thereby forfeiting his opportunity to have the claims reviewed on their merits.  As Davis did not raise these claims in either his direct appeal or in his petition for post-conviction relief, he no longer has an available avenue through which to properly present these claims.  As such, these claims are procedurally barred from federal habeas review.  *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) ("If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claims procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief."); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995) (holding that when "it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review").

Therefore, in order to obtain habeas review of his defaulted claims, Davis must

demonstrate cause for the default and actual prejudice as a result, or that failure to consider the claims would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "Cause" in this context is something external to the petitioner that cannot be fairly attributed to him. *Id*. at 753. Davis has identified no external impediment that prevented him from raising the claims in State court. Therefore, because Davis fails to demonstrate cause, the Court need not question whether there is prejudice. *See Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Neither does Davis establish that failure to consider his claims would result in a fundamental miscarriage of justice. The "fundamental miscarriage of justice" exception is confined to cases of actual innocence where the petitioner shows, as a factual matter, that he did not commit the crime of conviction. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citation and internal quotation marks omitted). A petitioner claiming this exception must present new, reliable evidence and show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* (citation omitted). Davis has not identified any new, reliable evidence to support his claims. Therefore, Davis cannot establish that a fundamental miscarriage of justice will result if these claims are not reviewed on their merits. Accordingly, the Court cannot grant habeas relief with respect to the allegations contained in Grounds One (I) and Three (F).

## Legal Standard for Remaining Claims

The Court's review of Davis' remaining claims is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prohibits the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state court's decision is "contrary to" Supreme Court law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause is reserved for decisions that either fail to identify the correct governing law, or that identify the correct governing law but misapply it to the case. *Id*. at 407-08. Under this standard, a state court's decision will not warrant federal habeas relief unless its application of federal law is both "incorrect *and* unreasonable." *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004) (emphasis in original) (citation omitted). A federal habeas court considers only the state court's conclusion when determining whether there has been an unreasonable application of federal law, and not the court's reasoning in reaching the decision. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

## I.     Ground One:  Abuse of discretion.

In Ground One, Davis argues that the trial court abused its discretion in admitting several items of evidence and in denying his *Batson* challenge. A State court's evidentiary rulings are issues of State law and are cognizable on federal habeas review "only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir.

1994)).  In reviewing a state court's evidentiary rulings, a federal habeas court "'is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness' under the Due Process Clause." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998) (citation omitted).  The "erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999) (citation omitted).  The Court turns to a review of Davis' claims with these standards in mind.

### A.  Ground One (A):  Failure to bar testimony of the extent of Officer Johnson's injuries.

Following voir dire, Davis' attorney moved that the State be prevented from "putting into evidence testimony concerning the extent of Mr. Johnson's injuries past the fact that they are serious."  (Trial Tr. vol. 2, 101).  The trial court denied the motion, holding that "neither party. . . is obligated to stipulate away its case, its evidence, its proof.  The degree and seriousness of the victim's injuries is certainly relevant.  The probative value of the evidence of the victim's serious injuries is not outweighed by its prejudicial effect."  (*Id.* at 103).  Davis was granted a continuing objection to such evidence.  (*Id.* at 104).

As an element of the charge of aggravated assault, the State was required to prove that Officer Johnson had suffered "serious bodily injury."  Miss. Code Ann. § 97-3-7(2).  The trial court's ruling that evidence of Officer Johnson's injuries was admissible was not error, much less error so extreme as to constitute a denial of fundamental fairness.  *See Castillo*, 141 F.3d at 222.  The Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law,

and the decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

**B. Ground One (B): Allowing portion of tapes admitted as S-8 and S-9 to be played for the jury.**

During the testimony of M.B.I. agent Randy Ginn, the video and audio recording of Davis in Officer Johnson's patrol car was admitted as Exhibit S-8. (Trial Tr. vol. 3, 217). The video recording of Davis in the Aberdeen Police Department was admitted as Exhibit S-9. (*Id*. at 218). Because the tapes would have, if played in their entirety, covered a number of hours, the tapes were cued to the incidents involving Davis "by agreement of counsel." (*Id*. at 218-19). After the tape from the patrol car was played for the jury, the prosecutor informed the trial court that "[a]ll that remains on this tape is radio traffic and whatnot. I would ask if we could stop the tape at this time and play the other tape." (*Id*. at 219). The trial court agreed, and the video recording of Davis in the police station was played for the jury. (*Id*. at 219-20).

Nothing in the record indicates that there were other portions of the tape that involved Davis that were not played for the jury. As such, the trial court's ruling that it was appropriate to play only the relevant portions of these tapes did not render Davis' trial unfair or constitute a denial of fundamental fairness. The Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, and the decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

**C. Ground One (C): Allowing improper redirect examination of State's witness Agent Randy Ginn.**

Following the redirect examination of Agent Ginn, defense counsel requested recross in

in order to "clear up" a question that was asked on cross-examination. (Trial Tr. vol. 2, 238).

The trial judge stated, "I didn't hear objection to that. If it was improper redirect, the proper

thing to have done would have been objected [*sic*] at that time, and I would have sustained your

objection." (*Id*. at 239).

Mississippi courts have held that "recross-examination is not allowable as a matter of

right, but a matter of trial court discretion." *Lipsey v. State*, 50 So. 3d 341, 349-50 (Miss. App.

2010) (citation omitted). The Fifth Circuit has held that "[i]n order to show an abuse of

discretion related to the limitations placed on cross-examination, a defendant must show that

those limitations were clearly prejudicial." *United States v. Martinez*, 151 F.3d 384, 390 (5th

Cir. 1998).

Davis has not specified how the State allegedly exceeded the scope of redirect

examination. Defense counsel did not allege improper redirect or object to the State's redirect,

but rather, asked to clear up a question. Davis has failed to demonstrate that he was prejudiced

by the denial or that the denial of recross examination denied him fundamental fairness. The

Mississippi Supreme Court's determination that this issue is without merit is neither contrary to,

nor does it involve an unreasonable application of, clearly established federal law, and the

decision is not based on an unreasonable determination of the facts in light of the evidence

presented. Habeas relief as to this claim is denied.

### D. Ground One (D): Allowing Dr. Chang and Agent Ginn to testify as experts.

Davis complains that Agent Ginn and Dr. Chang were improperly certified as experts.

However, Agent Ginn was never offered as an expert witness and never qualified as such. In

fact, at the only point where Agent Ginn was asked a questioned based on his experience in law enforcement, defense counsel objected, and the court sustained the objection. (*See* Trial Tr. vol. 3, 238).

Dr. Chang was admitted as an expert witness. Dr. Chang testified that he was a neurosurgeon who had attended four years of medical school at Johns Hopkins. (Trial Tr. vol. 3, 283). Following medical school, he completed seven years of additional training at Mount Sinai Hospital in New York City. (*Id*. at 284). Dr. Chang is a medical doctor who is licensed to practice in Mississippi. (*Id*.). He testified that he is "board eligible," and that he is required to complete "one more examination before becoming board certified." (*Id*.). The State, without objection from defense counsel, offered Dr. Chang as a medical doctor and expert in the field of neurosurgery. (*Id.* at 284-85). The trial court held "that Dr. Chang is a duly-licensed practicing physician in the State of Mississippi with a speciality in neurosurgery and that he is qualified by his education, training and experience to testify and offer expert opinions in this area." (*Id.* at 285).

As noted above, Agent Ginn did not testify as an expert. The trial court's acceptance of Dr. Chang as an expert, in light of his qualifications and the lack of objection from the defense, did not result in a denial of fundamental due process. The Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, and the decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

**E.  Ground One (E):  Failing to advise Defendant of his right to choose whether to testify.**

Davis alleges that the trial judge did not advise him of his right to choose whether to testify.  Following the close of the State's case-in-chief, the court instructed defense counsel to confer with his client "about what will be or not presented in his defense."  (Trial Tr. vol. 3, 290).  Following a recess, there was a discussion on the record as to whether the trial court would grant a cautionary instruction regarding Davis' ankle shackles, in the event that he was called to testify.  (*Id.* at 291).  When the defense announced that it intended to call Davis to testify, the trial judge allowed Davis to take the stand prior to the jury entering the courtroom. (*Id.* at 292).  The trial judge expressed concern about the jury seeing Davis' ankle restraints, noting that the court had been advised that Davis might step down from the witness stand and do some sort of demonstration during the course of his testimony.[2]  (*Id.*).

Respondents argue that the trial judge's comments indicate that there was some discussion regarding Davis' testimony that was not included in the record.  They also note that the Fifth Circuit has recognized a circuit split on the question of whether a trial judge is required to directly address a criminal defendant regarding his right to choose whether to testify.

The Court finds that Davis has identified no clearly established Supreme Court precedent that requires a trial judge to instruct a criminal defendant regarding his right to choose whether to testify.  Here, Davis' counsel was instructed to discuss with Davis which witnesses would testify, and it is clear from the record that it was communicated to the trial judge at some point

---

[2] Davis remained seated throughout his testimony and did not make such a demonstration.  (Trial Tr. vol. 4, 340).

that Davis intended to testify. The trial judge was within his discretion to rely on trial counsel's assertion that Davis wished to testify. The trial court did not commit error. Moreover, the evidence against Davis was strong. The jury was presented with testimony that Davis wrestled with Officer Johnson for the gun at the Aberdeen Police Department; the jury saw the video tape of Davis struggling with Officer Johnson; the jury heard testimony from Morgan, McAllister, and Hope Johnson that Davis had come to Johnson's home with Officer Johnson's gun and admitted the shooting; the jury heard testimony that Davis was found with the stolen items from the home burglary; and the jury was shown a tape of Davis' confession to law enforcement. Therefore, if any error was committed, it was harmless. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (holding that an error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict"). The Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, and the decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

### F. Ground One (F): Failing to grant a change of venue.

Prior to trial, the court held a hearing on Davis' motion for a change of venue. (Trial Tr. vol. 2, 2). In support of their motion, the defense introduced five issues of the local paper containing references to the shooting or Officer Johnson's recovery. (*Id*. at 3-6). The defense requested that the court take judicial notice that the City of Aberdeen, which is located in Monroe County, Mississippi, had a population of approximately 6,000 persons. (*Id.* at 6). The State called several witnesses employed by Monroe County who each testified that they had

contact with the population of Monroe County through their jobs and had not heard anything about Davis that would indicate he could not have a fair trial in Monroe County. (*Id*. at 9, 13, 16). The court took the matter under advisement until the close of voir dire, when the court held:

> The Court finds that the limited pre-trial publicity in this case has not been overly prejudicial. The pre-trial publicity has been minimal. The Court finds that there is not aroused popular feeling or public sentiment against the defendant. There is no passion or outrage expressed in the community against the defendant. There has been no prejudgment of his case, with the exception of a few potential jurors who were excused for cause, some of those jurors being related to the victim, I believe or else close friends.
>
> The Court finds that there is nothing in the record, including voir dire, to indicate the defendant cannot receive a fair trial by an impartial jury in Monroe County, Mississippi. Therefore, the defendant's motion for change of venue shall be, and the same is, hereby denied.

(*Id*. at 92).

The United States Supreme Court has held that while a criminal defendant is guaranteed the right to an impartial jury, "[i]t is not required. . . that the jurors be totally ignorant of the facts and issues involved." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id*. at 723. There must be "a showing of manifest probability of prejudice" to warrant an appellate court's interference. *Bishop v. Wainwright*, 511 F.2d 664, 666 (5th Cir. 1975). Based on the record in this case, it was not unreasonable for the trial judge to determined that the jurors were capable of rendering a fair verdict. The Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, and the decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

**G.  Ground One (G):  Allowing references to the race of Davis and Officer Johnson.**

Davis alleges that "[t]he fact that Officer Johnson is a white male (victim), and Petitioner a black male (accused), was emphasized throughout these criminal proceedings; to include, but not limited to[], comments by the court itself (Tr. 74)."  (ECF No. 2, 19).  Davis' citation to the record refers to a point during defense counsel's voir dire where he stated:

> It's quite important that we learn on the front end, before anybody actually takes the jury box over here, of any prejudices or biases that would affect the way that they might vote or the decisions that they might make as jurors in this case. Regretfully, there still are some racial biases in the State of Mississippi.  This is a case in which the defendant, as you can see, is black, and as you will find out, the victims, or alleged victims, in this case are white.

(Trial Tr. vol. 2, 73-74).  Defense counsel asked whether any potential jurors would "hold it against Mr. Davis that he is a black man who has allegedly committed a crime against white people?"  (*Id*. at 74).  No venire member responded.  (*Id*.).

The question complained of by Davis was asked by defense counsel for Davis' benefit, and the trial judge had no involvement in this line of questioning.  There is nothing in the record to suggest that the trial court emphasized the races of the victim and/or Davis.  The Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, and the decision is not based on an unreasonable determination of the facts in light of the evidence presented.  Habeas relief as to this claim is denied.

**H.  Ground One (H):  Denying Davis' *Batson* challenge to the State's peremptory strikes.**

Davis argues that the prosecution used its peremptory strikes to remove African-Americans from the jury on the basis of race.  (ECF No. 31, 11).  In *Batson v. Kentucky*, 476

U.S. 79 (1986), the Supreme Court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Id.* at 86. The Supreme Court has held:

> A defendant's *Batson* challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."

*Rice v. Collins*, 546 U.S. 333, 338 (2006) (internal citations and citation omitted).

During jury selection, the defense alleged that the State's use of its peremptory strikes violated *Batson*. (Trial Tr. vol. 2, 92). The State noted that it had tendered four African-American jurors, one of which was struck by the defense, and that three African-American jurors were on the final panel.[3] (*Id.* at 94-96). The trial court noted, "I do not believe that the defense has made a prima facie showing of. . . or pattern of the State excluding black jurors. However, if you would like to make a record on the ones you did exclude, I will be glad to hear those reasons. I will leave that up to you." (*Id.* at 96). The State chose to make a record.

The State asserted that Juror No. 3, Leeotis Randle Hubbard, failed to disclose that her granddaughter had previously been prosecuted by the District Attorney's Office and did not reveal this information until specifically asked. (*Id.* at 97). During voir dire, Hubbard was asked

---

[3] One of the African-American jurors was an alternate juror. (Trial Tr. vol. 2, 96).

of her relation to Selena Randall.  (*Id*. at 59).  Hubbard acknowledged that this was her granddaughter and that she had previously pleaded guilty in a case prosecuted by the same Assistant District Attorneys.  (*Id*. at 60).

The State noted that Juror No. 10, Edward Anthony Nickson, had improperly filled out his juror questionnaire.  (*Id*. at 98).  He listed his name as "Nickson A. Nickson," left his birth date blank, failed to provide his wife's name, failed to list his occupation, and did not respond to any questions during voir dire.  (*Id*.).  The State also stated that Nickson seemed "odd" or "goofy."  (*Id*.).

The State asserted that the dispatcher for the Aberdeen Police Department told the State that she was "relatively certain" that Juror No. 14, Jacqueline Sharp McMillian, had family members that had been arrested by the Aberdeen Police Department.  (*Id*. at 99).  The prosecutor stated that Juror No. 18, Patrick G. Lockett, had not responded to any questions during voir dire and had exhibited a hostile demeanor towards A.D.A. Emerson by refusing to make eye contact with her.  (*Id*. at 99-100).  The prosecutor further stated that the State had not even been aware that Juror Lois Ann Taylor was African-American.  (*Id.* at 100).  He maintained that a strike was used on Taylor because Officer Blaylock had informed them that her "husband had some pretty severe problems.  He has been arrested by a number of times by county - - I suppose it's county police officers but in any event, their family has had numerous run-ins with law enforcement." (*Id*.).  Finally, the State had been informed that Juror Rachel Marie Moore had a brother who had been involved in a police shooting.  (*Id*. at 100-01).

After hearing the State's reasoning, the trial court held:

All right.  Again, the Court finds that the defendant failed to establish a prima facie pattern of the State in excluding black jurors.  However, even assuming a

prima facie showing was made by the defendant, the State has given racially-neutral reasons for the exclusion - - for the exclusion of the black jurors. A copy of the Juror Information Sheet for Juror No. 10, Angel Jo - - or rather, Edward Anthony Nickson, Juror No. 10, will be made a part of this record for the purpose, sole purpose, of this hearing.

(*Id*. at 101). Juror Nickson's questionnaire was admitted as Exhibit 1. (*Id*.).

On direct appeal, the Mississippi Supreme Court considered this claim and determined that "each of the State's reasons has been upheld by this Court as being race-neutral." *Davis*, 76 So. 3d at 663. The court held:

> While the State offered a demeanor-based reason as one of two explanations for striking Juror Nickson, the trial judge himself included the incomplete jury questionnaire as part of the record. Therefore, the record supports the nondemeanor-based, race-neutral reason for Juror Nickson's exclusion. Furthermore, the State offered only a demeanor-based reason for its strike of Juror Lockett, so the trial court must have credited this race-neutral reason. . . . [T]the record supports the race-neutral reasons offered by the State for its strike of Jurors Lockett and Nickson.
>
> Furthermore, "[t]his Court must consider the overall context of the reasons given for peremptory strikes." Davis failed to meet his burden of proof and persuasion before the trial court and this Court. The record contains no evidence regarding the racial composition of the jury panels or the petit jury that could help determine whether the State's reasons were actually pretextual. And Davis failed to offer any rebuttal to the State's proffered reasons for striking the six jurors. We find nothing in the record which demonstrates that the trial court erred in accepting the State's race-neutral reasons for striking each juror.

*Id.* at 663-64. The court held that the trial court's "*Batson* ruling was not clearly erroneous or against the overwhelming weight of the evidence." *Id.* at 664. The record in this case supports the Mississippi Supreme Court's determination that Davis failed to prove purposeful discrimination in the State's exercise of its peremptory challenges. The Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, and the decision is not based on an

unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

## II.     Ground Two: Prosecutorial misconduct.

In Ground Two, Davis makes multiple allegations of prosecutorial misconduct. The Fifth Circuit has held:

> This court's review of an assertion of prosecutorial misconduct takes place in two steps. First, we must initially decide whether or not the prosecutor made an improper remark. *United States v. Munoz*, 150 F.3d 401, 414 (5th Cir.1998). If an improper remark was made, we must then evaluate whether the remark affected the substantial rights of the defendant. *Id*. at 415; *Garza*, 608 F.2d at 663.

*United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999). "[T]he determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *United States v. Ebron*, 683 F.3d 105, 140 (5th Cir. 2013). The Fifth Circuit has noted the following:

> To determine whether the argument affected the defendant's substantial rights, we examine (1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt. *Id*. at 302. As we will not set a conviction aside if the prosecutor's conduct did not contribute to the guilty verdict, this analysis is equivalent to review for harmless error. *United States v. Cardenas*, 778 F.2d 1127 (5th Cir.1985); *United States v. Beckett*, 706 F.2d 519 (5th Cir.1983).

*United States v. Simpson*, 901 F.2d 1223, 1227 (5th Cir. 1990). "For prosecutorial misconduct to warrant a new trial, it must be so pronounced and persistent that it permeates the entire atmosphere of the trial, . . . and casts serious doubt upon the correctness of the jury's verdict." *United States v. Wyly*, 193 F.3d 289, 299 (5th Cir. 1999) (citing *United States v. Wallace*, 32 F.3d 921, 926 (5th Cir. 1994)).

### A.  Ground Two (A): Improper peremptory strikes.

The Court has already determined that the State's peremptory strikes were not purposefully discriminatory as contemplated by *Batson*, much less an error that "casts serious doubt upon the correctness of the jury's verdict." *Wyly*, 193 F.3d at 299. The Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, and the decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

### B. Ground Two (B): Prejudicial comments.

Davis alleges that the State made various prejudicial comments during trial. First, he complains that, during opening arguments, the prosecutor stated that Davis "was drunk, and mean apparently when he is drunk." (Trial Tr. vol. 2, 113). He cites to another portion of opening argument where the prosecutor describes Davis' and Officer Johnson's struggle for control of the gun and stated, "the defendant is trying to bring the gun to the officer's head." (*Id.* at 121).

The comments complained of by Davis were permissible, because they were supported by the evidence. Moreover, the jury was instructed that the remarks of counsel were not evidence, and that any statement having no basis in the evidence should be disregarded. (Trial Tr. vol. 1, 26). The United States Supreme Court has recognized that "arguments of counsel generally carry less weight with a jury than do instructions from the court." *Boyde v. California*, 494 U.S. 370, 384 (1990).

Davis also complains that the prosecutor "badgered" him during cross-examination, and although he does not specify the questions to which he refers, he cites to page 318 of the record.

Respondents submit that Davis is complaining about the following:

> Q:   So let me get this straight.  He pulled the gun - - he is controlling your hands.  He pulled the gun toward him?
>
> A:   No.  Our arms - - my arm is out like this.  I told you, when I reached for the gun and came around like this, he automatically - - he behind me.  He got a hold of my arm, trying to get the pistol out of my hand, and then we go - - our arms up in the air.  That's when the shot is being fired.  My hand go up in the air like that, and then around about, I guess, after the third shot, and then we - - we moving around at the same time.  We moving around at the same time and bouncing off stuff.  I blacked out.  I seen darkness.  I heard the fourth shot, and I heard him say, Oh, but then I could no longer feel the force, you know, pulling my arm.
>
> Q:   Right.  After you shot and crippled him, you could no longer feel the force.  Correct?
>
> A:   I didn't shoot him.
>
> Q:   You didn't shoot him.  Well, look around the courtroom.  Was it one of us?
>
> [Defense consel] MR. BRAHAN:  Objection, Your Honor.  That's argumentative.
>
> THE COURT:  Sustained.

(Trial Tr. vol. 4, 317-18).  Davis admitted that the gun was in his hand and that his finger was on the trigger.  (*Id*. at 318).  The Court notes that, to the extent that this line of questioning was argumentative, Davis' objection was sustained.

Davis also argues that, during closing arguments, the prosecutor called him a liar.

> All that matters for this trial is credibility, because that's what we are down to.  That's all that matters right now, because here is the deal:  Whether he is guilty or not of Count I - - well, actually, let me clarify something, even if his story is completely true, he was acting recklessly in taking a police officer's gun, keeping that gun in his hand.  Even if you take everything he says as true, which it's not, but if you do, your verdict still has to be guilty on Count I, because he is acting recklessly with that police officer's firearm in creating that situation, but luckily for y'all you don't have to really agonize over that because somebody is lying through their teeth, and the reason that's important, him contradicting pretty much each and every witness, the reason that's important is because it tells you who to believe.

(*Id*. at 365-66).

As the Court has previously noted, the jury was instructed that their decision was to be based on the evidence, and the Supreme Court has recognized that juries normally afford instructions more weight than the arguments of counsel.  *See Boyd*, 494 U.S. at 384.  The Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, and the decision is not based on an unreasonable determination of the facts in light of the evidence presented.  Habeas relief as to this claim is denied.

### C.  Ground Two (C):  Improper leading questions.

Davis argues that the prosecutor improperly asked leading questions of several witnesses on pages 128, 131, 133, 144, and 261 of the record, although he does not specify which questions were impermissible.  "[C]onclusory allegations do not raise a constitutional issue in a habeas proceeding.  *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases)."  *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

Davis does cite other allegedly impermissible questions with particularity.  He cites a portion of questioning whether the prosecutor, in an attempt to clear up the fact that the dispatcher worked the night shift and took at "lunch break" at dinner time, stated, "Okay.  So obviously, she was working the night shift, and she had to eat dinner or something, and you were filling in for her, but this - -[.]"  (Trial Tr. vol. 3, 168).  The trial court sustained defense counsel's objection to leading.  (*Id*.).

An objection was lodged during the direct examination of the police dispatcher, Anita Russell, who was asked, "Okay.  Just so the jury can see, if you can step here.  When you say [Davis] met you with the gun in hand and held it your head, pointed it at your face or head - -[.]"

(*Id*. at 176). The trial court sustained defense counsel's objection. (*Id*.). Afterward, Russell was asked to show the jury what Davis did when he met her in the hallway. (*Id.*).

While questioning Officer Bailey about the description of the stolen basketball jersey that was recovered, the prosecutor asked, "Okay. So that would have been - - I don't know if you follow basketball much at all - - that would be a Lebron James' basketball jersey." (*Id*. at 242). Defense counsel objected, and the trial court sustained the objection. (*Id*. ). Later, during the questioning of Shurn Morgan, the prosecutor asked whether Davis "actually ma[de] a presence" at Hope Johnson's house on September 25, 2004. (*Id*. at 260). The defense objected to leading, and the court sustained the objection. (*Id*.). Morgan then went on to explain that he saw Davis at Johnson's home the night of the shooting, a fact that Davis himself admitted. (*Id*. at 261-262; *see also* Trial Tr. vol. 4, 332-333).

Davis also cites to a portion of his own cross-examination as evidence of improper leading. There were no objections to leading. However, after Davis alleged that the State's witnesses had lied on the stand, the prosecutor asked, "All right. Talk about Terry McAllister. Is he also a part of this conspiracy against you?" (Trial Tr. vol. 4, 331). Defense counsel objected, and the court sustained the objection. (*Id*. at 332). The State then noted that Davis had argued that Officer Johnson, Anita Russell, and Hope Johnson had lied and inquired about Terry McAllister. (*Id*. at 332). Davis then alleged that McAllister had also lied. (*Id*.).

None of the cited portions of the transcript represent prosecutorial misconduct, much less misconduct that would cast "serious doubt upon the correctness of the jury's verdict." *Wyly*, 193 F.3d at 299. The Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal

law, and the decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

### D. Ground Two (D): Improper hearsay.

Davis maintains that the prosecutor improperly elicited hearsay evidence, citing to the following portion of Officer Johnson's testimony:

> Q: Okay. And when you got there, did anybody assist you initially?
> A: Initially, Officer Keith Stribling. Officer Shelton was still on the radio, because our dispatcher had went to eat, and then he - - then he came back there and he assisted, Officer Shelton did. Mr. Davis kept getting up out of his chair. So Officer Stribling handcuffed him to a folding metal chair, and Officer Shelton came back there - - let me back up a minute. When we was at the S.O., they made a comment that this guy likes to fight. He always give the Amory P.D. - -
> MR. BRAHAN: Objection to the hearsay, Your Honor.
> THE COURT: Sustained.
> Q: [The prosecutor] If you could just kind of stay away from, you know, what other folks said.

(Trial Tr. vol. 2, 132).

Similarly, when asking Officer Bailey about the stolen basketball jersey that was recovered, the prosecutor asked, "Do you know whose jersey that would be?" (Trial Tr. vol. 3, 242). Officer Bailey responded, "I was told that it was Lebron James'." (*Id.*). Defense counsel objected to hearsay, and the court sustained the objection. (*Id.* at 243).

Neither of these comments can fairly be construed as the prosecutor eliciting hearsay testimony. They certainly do not contain an error so serious that it "casts serious doubt upon the correctness of the jury's verdict." *Wyly*, 193 F.3d at 299. The Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, and the decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to

this claim is denied.

### E.  Ground Two (E):  Improper redirect examination.

Davis complains that the prosecutor asked improper questions on redirect and

"interjected his own version of testimonial evidence."  (ECF No. 2, 24).  Davis first argues that

the following portion of the redirect examination of Officer Johnson, in which the State was

attempting to respond to the defense's questions regarding Davis' intoxication, was improper:

> Q:      But no matter how intoxicated he was or wasn't, which is - - part of your
>         training, are you aware that voluntary intoxication is not a defense to
>         anything you do?
>         MR. BRAHAN:        Objection, Your Honor.  That calls for a legal
>                            conclusion on the part of the witness.
>         THE COURT:         Sustained.

(Trial Tr. vol. 3, 159).

"It is well established that voluntary intoxication is not a defense in Mississippi." *Adams*

*v. State*, 62 So. 3d 432, 441 (Miss. App. 2011) (citing *Smith v. State*, 445 So. 2d 227, 230-31

(Miss. 1984)).  The jury was instructed in this case that voluntary intoxication is not an

affirmative defense in Mississippi.  (*See* Trial Tr. vol. 1, 32).  Therefore, even if it was error to

ask Officer Johnson about the law regarding voluntary intoxication, it was not an error that

affected the verdict.

Davis also complains about the following portion of the redirect examination of Agent

Ginn:

> Q:      Would Officer Johnson be in a really good position to know exactly what
>         happened?
> A.      No, sir.
> Q:      Excuse me - - let me rephrase - -
>         MR. BRAHAN:        Asked and answered, Your Honor.
>         THE COURT:         Sustained.
>         MR. JOYNER:        Your Honor, under Rule 607, the State can impeach

|  |  | a witness at any time, if I may ask . . . |
|---|---|---|
| | MR. BRAHAN: | Is he attempting to impeach his own witness, Judge? |
| | MR. JOYNER: | As to that point, yes.  I believe the witness misunderstood the question, Your Honor. |
| Q: | | Would Officer Johnson, the victim in this case, have been in a position to know exactly what the defendant was doing? |
| A: | | Yes, he was there and would know what was going on. |
| Q: | | Okay.  And in fact, the only two people that are in a position to know what went on are Officer Johnson and the defendant, are they not? |
| A: | | Yes, sir.  That's correct. |

(Trial Tr. vol. 3, 233-34).  The cited exchange does not represent improper redirect examination. It was not an error which permeated the trial or cast doubt on the verdict.  *See Wyly,* 193 F.3d at 299.

Davis also complains that there was further improper questioning during Agent Ginn's redirect examination, which can be found on page 237 of the transcript.  (ECF No. 2, 24). However, there is no objection by defense counsel to the questions posed to Agent Ginn.  The Court notes that, on the following page of the transcript, the trial court sustained defense counsel's objection when the prosecutor asked "is that common for defendants, when they are giving you statements, to leave - -."  (Trial Tr. vol. 3, 238).  Agent Ginn did not answer the question.  (*Id.*).  The Court finds that nothing in the cited portions of the transcript rises to the level of prosecutorial misconduct under *Wyly*.  The Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, and the decision is not based on an unreasonable determination of the facts in light of the evidence presented.  Habeas relief as to this claim is denied.

**F.  Ground Two (F):  Tampering with and only playing a portion of the videotapes**

**admitted as S-8 and S-9.**

As was previously mentioned, the video recording from Officer Johnson's vehicle, and the video recording of Davis in the processing room were admitted at trial and played for the jury. Davis alleges that "prior to playing these tape recordings to the jury, the prosecutor tampered with this evidence, and showed portions of the recordings to the jury that was not previously disclosed to the defense." (ECF No. 2, 25). He also complains that the tapes were not played in their entirety.

Davis' allegation that the tapes had been tampered with is not supported by argument or evidence. Such "conclusory allegations do not raise a constitutional issue in a habeas proceeding. *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases)." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

In support of his claim that some portions of the tape played for the jury were not provided in discovery, Davis cites to page 230 of the transcript, which documents a portion of the cross-examination of Agent Ginn in which the defense was asking Ginn to play a portion of one of the tapes. (Trial Tr. vol. 3, 230). Defense counsel asks Agent Ginn to rewind the tape to the beginning and play it forward, and counsel apologizes, noting that this tape "had a little more at the beginning than the one I received in discovery." (*Id.*).

As previously noted, the tapes in question covered many hours of surveillance, only a portion of which showed the incidents involving Davis. Defense counsel did not object that he had not been provided full discovery, but rather, simply noted that he accidentally had the witness rewind the tape a little too far. Davis has not demonstrated that the prosecution's offer of these tapes into evidence constituted misconduct under *Wyly*. The Mississippi Supreme

Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, and the decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

### G. Ground Two (G): Misstating facts.

Davis argues that the prosecutor misstated facts several times during trial. He cites to several portions of the State's closing argument, located on pages 364, 368, and 371 of the transcript.

On page 364 of the transcript, the State, in closing argument, addressed Hope Johnson's testimony. (Trial Tr. vol. 4, 364). Defense counsel objected, alleging that "[t]he prosecutor has mischaracterized Hope Johnson's statement." (*Id*. at 364-65). The trial court overruled the objection, noting that "[t]he jury has heard the testimony, and they will use their own recollection of what the witness said." (*Id.* at 365). There was no objection lodged on page 368 of the record, and Davis fails to specify which portion of the argument he challenges. Finally, on page 371 of the record, defense counsel objected that the prosecutor was "trying to incite the bias and passion of the jury." (*Id*. at 371). The trial judge instructed the prosecutor that his time was up, and that it was time to conclude. (*Id*. at 371-72).

As the Court has previously noted, the jury in this case was instructed that their decision was to be based on the evidence rather than the arguments of counsel. The Supreme Court has recognized that juries normally afford instructions more weight than the arguments of counsel. *Boyd*, 494 U.S. at 384. Moreover, even if the prosecutor's statements could be considered improper, it was not misconduct that permeated the entire trial or cast doubt upon the jury's

verdict. *See Wyly*, 193 F.3d at 299. Therefore, the Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, and the decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

### H.  Ground Two (H):  Suborning false testimony.

Davis complains that the prosecution elicited false testimony on several occasions. He claims that the prosecutor allowed false testimony by Agent Ginn, Officer Bailey, and Dr. Chang. However, he fails to identify which portions of the testimony contained on these pages he thinks were untrue. A review of these portions of the record reveals no misconduct by the State. Davis' allegations are conclusory and fail to raise a constitutional issue. *See, e.g., Ross*, 694 F.2d at 1012. The Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, and the decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

### I.  Ground Two (I):  Improper comments.

Davis maintains that the State made improper comments "for the sole purpose of prejudicing and inflaming the jury against Petitioner." (ECF No. 2, 26). Davis first challenges two portions of his cross-examination. The State asked Davis, "You said you felt really bad about the shooting. What did Officer Johnson and his family say when you apologized to them?" (Trial Tr. vol. 4, 330). Defense counsel objected, and the trial court sustained the objection. (*Id*.). The State withdrew the question. (*Id*.). Later, after Davis admitted that he was

guilty of escape, burglary, and possession of a firearm by a felon, the State questioned him

regarding the aggravated assault charge. The prosecutor asked Davis, "And in Count I of that

indictment, whether or not you took that gun and purposely pointed it at the officer and pulled

the trigger, you understand that that indictment encompasses. . . you understand that that

indictment within it, if you. . . if the situation you create, that gun was fired recklessly, - -" (*Id.* at

338). Defense counsel objected, and the court sustained the objection. (*Id.*).

Davis also complains that, during closing arguments, the State made the following

comment: "It is absolutely true that it is Jeremy Davis' day in court. I have no qualms about

that. This is his trial. It's his day in court, but it's somebody else's day in court. It's James

Johnson's day in court. It's his family's day in court. This is the law enforcement's community

day in court." (Trial Tr. vol. 4, 371). Defense counsel objected, and the trial court told the

prosecutor that it was time to conclude his argument. (*Id.*).

As was previously discussed, the jury was instructed to base their decision on the

evidence rather than the arguments of counsel, and the Supreme Court has recognized that juries

normally afford instructions more weight than the arguments of counsel. *See Boyd*, 494 U.S. at

384. Moreover, these questions do not rise to the level of prosecutorial misconduct or cast doubt

on the jury's verdict. *Wyly*, 193 F.3d at 299. The Mississippi Supreme Court's determination

that this issue is without merit is neither contrary to, nor does it involve an unreasonable

application of, clearly established federal law, and the decision is not based on an unreasonable

determination of the facts in light of the evidence presented. Habeas relief as to this claim is

denied.

### J. Ground Two (J): Improper closing argument.

Davis complains that, during closing argument, the State "improperly vouched for the credibility of the State's witnesses - - calling Petitioner a liar in the process [.]" (ECF No. 2, 26). He cites to page 354 of the transcript, but he does not point to a particular statement that he believes was improper. Davis' jury was instructed to base their decision on the evidence rather than the arguments of counsel, and the Supreme Court has recognized that juries normally afford instructions more weight than the arguments of counsel. *See Boyd*, 494 U.S. at 384. Moreover, these questions do not rise to the level of prosecutorial misconduct or cast doubt on the jury's verdict. *Wyly*, 193 F.3d at 299. The Mississippi Supreme Court's determination that this issue is without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law, and the decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

## III.      Ground Three:  Ineffective assistance of counsel.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *See, e.g.,Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). To merit relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984) by demonstrating both constitutionally deficient performance by counsel and actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. at 687. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Counsel's performance is deficient if it falls "below an objective standard of reasonableness" as measured by professional norms. *Id*. at 688. Judicial scrutiny of counsel's performance is highly

deferential, however, and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (citation omitted).

A petitioner satisfies *Strickland*'s prejudice prong by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The failure to prove either deficient performance by counsel or actual prejudice as a result of counsel's actions or omissions defeats a claim of ineffective assistance. *See id.* at 687; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). In a case where the state court has rejected the merits of a petitioner's ineffectiveness claim, the "pivotal question" in a federal habeas proceeding "is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 785 (2011).

**A. Ground Three (A): Failure to challenge Davis' competence at the time of the crime.**

Davis argues that his trial counsel should have argued that he was incompetent at the time of the crime, as he "had consumed a large amount of drugs and alcohol," had "failed the 'sobriety test'," his "eyes were not tracking evenly," and he "was acting paranoid." (ECF No. 2, 28). However, as discussed above, voluntary intoxication is not a defense in Mississippi. *Adams*, 62 So. 3d at 441. The jury was so instructed. (Trial Tr. vol. 1, 32). Therefore, Davis, who has not alleged that his intoxication was involuntary, remained criminally liable for his actions. Trial counsel cannot be deemed deficient for choosing not to raise a defense which has

no basis in the law. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding that counsel is not required to file meritless motions). Further, Davis cannot demonstrate he was prejudiced by counsel's decision not to pursue this argument. Accordingly, the Mississippi Supreme Court's decision that this claim is without merit is neither contrary to, nor does it involve an unreasonable application of, *Strickland* and its progeny. The decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

### B. Ground Three (B): Failure to challenge an illegal arrest.

Davis complains that his trial counsel should have challenged the legality of his arrest, as his initial arrest was for driving under the influence, but the evidence did not show that he was actually driving. Davis claims that all of his other charges stem from his "illegal arrest," and are, therefore, "fruit of the poisonous tree." However, the "fruit of the poisonous tree" doctrine states that the exclusionary rule is applied when "the challenged evidence is in some sense the product of illegal governmental activity." *Nix v. Williams*, 467 U.S. 431, 444 (1984) (citation omitted). Here, Davis was convicted due to his own actions, not by evidence obtained through law enforcement's exploitation of an illegal arrest.

Officer Johnson testified that he received a report that a vehicle was "backing down the four lane on a bridge," and that he ultimately found Davis "in the vehicle, trying to start the vehicle." (Trial Tr. vol. 2, 128-29). Officer Johnson testified that Davis did not have a valid driver's license or proof of insurance, and that his blood alcohol level was twice the legal limit. (*Id*. at 131-32). Davis testified that he had been driving the car that was parked on the side of the road, and that he was trying to start his car when the police arrived. (Trial Tr. vol. 3, 295). He

admitted that he had been drinking alcohol all day that day.  (*Id*. at 296).

In light of the record, Officer Johnson had probable cause to support his initial arrest. Counsel was not deficient for failing to object to the legality of an arrest for a crime in which Davis admits guilt and which was not the cause of the crimes for which Davis was ultimately convicted.  Moreover, Davis cannot demonstrate that he was prejudiced by counsel's decision not to pursue this argument. Accordingly, the State court's decision that this claim is without merit is neither contrary to, nor does it involve an unreasonable application of, *Strickland* and its progeny.  The decision is not based on an unreasonable determination of the facts in light of the evidence presented.  Habeas relief as to this claim is denied.

### C.  Ground Three (C):  Failure to suppress Davis' confession.

Davis argues that trial counsel should have sought to suppress Davis' confession to law enforcement, as he has a "six year education" and had a headache when he was taken into custody.  (ECF No. 2, 31).

At trial, Agent Ginn testified that, once Davis was apprehended following his escape, he was *Mirandized* in the police car.  (Trial Tr. vol. 3, 195).  Agent Ginn stated:

> We advised Mr. Davis of his rights, and he explained that he understood them, and that he would be willing to talk to us, but his head hurt, he was tired, and he wanted to know if we would come back later and talk to him again at another time, and we told him that we would.  We came back later that afternoon.

(*Id.* at 196).  A copy of the form advising Davis of his *Miranda* rights was admitted without objection as Exhibit S-4.  (*Id*. at 199).  A second waiver of rights form, signed by Davis prior to his confession later that day, was admitted without objection as Exhibit S-5.  (*Id*. at 201).  Davis' signed waiver reads, in pertinent part:

> I have read this statement of my rights, and I understand what my rights are.  I am

> willing to make a statement and answer questions. I do not want a lawyer at this
> time. I understand and know what I am doing. No promises or threats have been
> made to me and no pressure or coercion of any kind has been used against me.

(*Id.* at 201). Following this waiver of rights, law enforcement talked to Davis, who "was very calm and forthcoming about the events of that night, giving details about what happened, where he had gone and what he had done during the day prior to and following the shooting incident there at the police department." (*Id.* at 202).

Thereafter, an audiotape of Davis' confession, with an accompanying transcript, were admitted as Exhibits S-6 and S-7. (*Id.* at 205, 208). The tape was played for the jury. (*Id.* at 209). On the tape, Davis admitted to shooting a police officer, escaping, burglarizing a home, and being a felon in possession of a firearm. (*Id.* at 210-11).

The Court finds that Davis was properly advised of his rights on more than one occasion, and nothing in the record indicates that his confession was improper. Counsel is not required to file meritless motions. *See, e.g., Koch*, 907 F.2d at 527. As there was no basis in the law for granting a motion to suppress the confession, Davis was not prejudiced by trial counsel's failure to pursue such a motion. Moreover, as previously noted, Davis admitted under oath that he as guilty of escape, burglary, and being a felon in possession of a firearm. He also admitted that, at the time of the shooting, he had the gun in his hand and his finger on the trigger. Accordingly, the State court's decision that this claim is without merit is neither contrary to, nor does it involve an unreasonable application of, *Strickland* and its progeny. The decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

### D. Ground Three (D): Failure to argue that the assault was the result of duress or

**to have the charge reduced to simple assault.**

Davis argues that his counsel should have argued that his shooting of Officer Johnson was the result of duress, or that his aggravated assault charge should have been reduced to simple assault. Davis asserts that he did not intend the shooting, but rather, that he just wanted control of the gun "and toss it away from the officer so he would not be shot when he ran." (ECF No. 2, 33). Davis was under lawful arrest at the time of the shooting and chose to take an officer's gun in an attempt to facilitate an escape. The shooting was not the result of duress, but rather, Davis' decision to attempt to escape from custody.

Under Mississippi law, a person is guilty of simple assault if:

[H]e (i) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; (ii) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (iii) attempts by physical menace to put another in fear of imminent serious bodily harm[.]

Miss. Code Ann. § 97-3-7(1)(a).

A person is guilty of aggravated assault under Mississippi law if:

[H]e (i) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; (ii) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (iii) causes any injury to a child who is in the process of boarding or exiting a school bus[.]

Miss. Code Ann. § 97-3-7(2)(a). Davis was charged and convicted of Miss. Code Ann. § 97-3-7(2)(b), which provides for an enhanced punishment when the aggravated assault is committed against a law enforcement officer, among others.

Davis' conduct constituted aggravated assault, and an attempt to reduce the charge would not have been supported by the particular facts of this case. Davis' defense attorney did,

however, repeatedly question the State's witnesses about whether Davis intended to shoot Officer Johnson when he took the firearm. Davis' argument is meritless, and he cannot demonstrate any prejudice as a result of counsel's decision not to further pursue this argument. Accordingly, the State court's decision that this claim is without merit is neither contrary to, nor does it involve an unreasonable application of, *Strickland* and its progeny. The decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

**E. Ground Three (E): Appellate counsel's failure to file an adequate appellate brief.**

Davis' appellate counsel filed a brief stating he was unable to find any issues arguable on appeal, pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005). Davis argues that, because the Mississippi Supreme Court found that there was an arguable *Batson* claim, appellate counsel should have briefed this claim initially. Further, Davis claims that, in addition to the *Batson* issue, counsel was ineffective for failing to raise the other claims raised in his federal habeas petition.

The two-pronged *Strickland* test is applicable to reviewing the performance of appellate counsel. *See Evitts v. Lucey*, 469 U.S. 387, 397-99 (1985). In *Jones v. Barnes*, 463 U.S. 745 (1985), the United States Supreme Court held that appellate counsel does not have a duty to raise every "colorable" claim on appeal, suggesting that counsel has a broad discretion in determining which issues are more likely to be successful on appeal. *Jones*, 463 U.S. at 751-54.

The Court notes that, after consideration of the merits of the *Batson* issue, the Mississippi Supreme Court found that the trial court's "*Batson* ruling was not clearly erroneous or against

the overwhelming weight of the evidence." *Davis*, 76 So. 3d at 664. This decision was, as the Court has already found, supported by the record. Because the State supreme court ultimately ordered briefing on this issue and denied Davis' allegation on the merits after considering the arguments of the parties, Davis cannot demonstrate that he was prejudiced by appellate counsel's failure to initially brief that *Batson* issue. Additionally, the Court notes that Davis' other issues lacked merit, and counsel was not required to raise every arguable claim on appeal. Because these claims lack merit, Davis cannot demonstrate that he was prejudiced by counsel's failure to pursue these claims on direct appeal. Accordingly, the State court's decision that this claim is without merit is neither contrary to, nor does it involve an unreasonable application of, *Strickland* and its progeny. The decision is not based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief as to this claim is denied.

## IV.     Ground Four:  Sentence as an habitual offender.

Davis was sentenced as an habitual offender pursuant to Miss. Code Ann. § 99-19-81. (Trial Tr. vol. 4, 395). Davis claims that he was improperly sentenced as an habitual offender, because "the jury was dismissed, and the judge sitting alone sentenced Petitioner as an habitual offender." (ECF No. 2, 35).

The United States Supreme Court has held that "[o]ther than **the fact of a prior conviction**, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis added). Therefore, the trial court was not required to present evidence of Davis' status as an habitual offender to the jury but was allowed to make the determination itself.

Davis also argues that the evidence presented in support of his habitual offender status was inadequate. (ECF No. 2, 37). Specifically, he argues that there was no proof presented as to how much time he actually served in prison on the prior convictions, and that the prior convictions were not authenticated from authorized personnel. (*Id*.).

Miss. Code Ann. § 99-19-81 states:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-81. Following Davis' convictions, the trial court considered the State's evidence in support of Davis' charge as an habitual offender. The Monroe County Circuit Clerk testified that Davis pleaded guilty to an August 23 1996, grand larceny in Cause No. CR96-172. (Trial Tr. vol. 4, 392-93). Davis was sentenced to "a term of five years in the custody of the Mississippi Department of Corrections and placed in the Regimented Inmate Discipline Program." (*Id*. at 392). Likewise, Davis pleaded guilty to a January 20, 1997, burglary of a building in Monroe County Circuit Court Cause No. 97-0006. (*Id*. at 392-93). Davis' sentence in Cause No. 97-0006 was ordered to run concurrent with his sentence in Cause No. CR96-172. (*See id*. at 390). Certified copies of Davis' criminal information, waiver of indictment, affidavit, and sentencing order in that cause were admitted as Exhibit S-1 to the sentencing hearing. (*Id*. at 386, 394).

Additionally, the parties stipulated to documents from Monroe County Circuit Court Cause No. 96-172 containing, "the indictment, the defendant's biographical information, the . . .

basically, there is more than one sentencing order due to probation being revoked.  It has the original RID sentencing order, and then likewise the subsequent sentencing order to his probation being revoked."  (Trial Tr. vol. 3, 185).  Before the stipulation, the revocation order was removed.  (*Id.* at 186).  These certified copies were then admitted by stipulation as Exhibit S-3 to trial and considered by the trial court in the habitual offender determination.  (*Id.* at 187-88; Trial Tr. vol. 4, 394).  The trial court found that the habitual offender enhancement applied to Davis.  (*Id.* at 395).

The evidence supports the determination that Davis was properly sentenced as an habitual offender.  Therefore, the Mississippi Supreme Court's decision rejecting this claim as without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law.  It is not based on an unreasonable determination of the facts in light of the evidence presented.  Habeas relief is not warranted as to this claim.

**Evidentiary Hearing**

Davis requests that this Court hold an evidentiary hearing.  The holding of federal evidentiary hearings is governed by 28 U.S.C. § 2254(e)(2), which reads:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on this claim unless the applicant shows that -
>
> (A) the claim relies on -
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish

> by clear and convincing evidence that but for constitutional error,
> no reasonable factfinder would have found the applicant guilty of
> the underlying offense.

28 U.S.C. § 2254(e)(2).  The United States Supreme Court has held that "[p]rovisions like §§ 2254(d)(1) and (e)(2) ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'"  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1401 (2011) (citations omitted).  Moreover, the Court in *Cullen* noted that "when the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'"  *Cullen*, 131 S. Ct. at 1399 (citations omitted).  Davis has failed to demonstrate that his case falls within the narrow restrictions where an evidentiary hearing is warranted.

Additionally, the Court has been provided with Davis' petition and supporting memorandum, Respondent's answer and exhibits, Davis' traverse, and the State court record.  Therefore, the Court finds that there is no need for an evidentiary hearing in this case.  *See, e.g., Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000) (holding that the Fifth Circuit has "repeatedly found that a paper hearing is sufficient to afford a petitioner a full and fair hearing on the factual issues underlying the petitioner's claims").

## Certificate of Appealability

Davis must obtain a certificate of appealability ("COA") before appealing this Court's decision denying federal habeas relief.  28 U.S.C. § 2253(c)(1).  A COA will not issue unless Davis makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To obtain a COA on any claim rejected on its merits, Davis must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  To obtain a COA on a claim that has been rejected on procedural grounds, Davis must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*  Applying these standards, the Court concludes that a COA should be denied as to all of the claims raised by Davis.

**Conclusion**

It is hereby ordered that Davis' petition for a writ of habeas corpus is **DENIED**, and that this action is **DISMISSED WITH PREJUDICE**.  A certificate of appealability is **DENIED**.  All pending motions are **DISMISSED AS MOOT**.  A final judgment in accordance with this opinion and order will issue today.

SO ORDERED, THIS the 23rd day of July, 2014.


 /s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**